**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**


TIMOTHY WAYNE TURNER                                    PLAINTIFF


v.                          NO. 3:23-cv-00013-PSH


KILOLO KIJAKAZI, Acting Commissioner                   DEFENDANT
of the Social Security Administration


## MEMORANDUM OPINION AND ORDER


In this case, plaintiff Timothy Wayne Turner ("Turner") challenges

the denial of his application for disability insurance benefits. Turner does

so on the ground that the findings of an Administrative Law Judge ("ALJ")

are not supported by substantial evidence on the record as a whole.[1] Turner

maintains that his gastric problems were not properly evaluated at step

two of the sequential evaluation process, and his residual functional

---

[1]      The question for the Court is whether the ALJ's findings are supported by
"substantial evidence on the record as a whole and not based on any legal error." See
Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a
preponderance, but enough that a reasonable mind would accept it as adequate to
support the [ALJ's] conclusion." See Id. "Legal error may be an error of procedure, the
use of erroneous legal standards, or an incorrect application of the law." See Lucus v.
Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting Collins v. Astrue, 648 F.3d 869, 871
(8th Cir. 2011) (citations omitted)).

capacity was erroneously assessed because it does not adequately account for his gastric problems, mental impairments, difficulties standing and walking, and limited daily activities. Turner also maintains that the vocational expert's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT"). Because substantial evidence on the record as a whole supports the ALJ's findings, his decision is affirmed.

Turner was born on August 25, 1980, and was thirty-nine years old when he filed his application for disability insurance benefits.[2] He initially alleged that he became disabled on January 17, 2016. During the administrative hearing, he amended the onset date to June 21, 2019, "based on the res judicata effect of a prior unfavorable decision dated June 20, 2019." See Docket Entry 10 at CM/ECF 3, n.2. His insured status for disability insurance benefits expired on September 30, 2021.[3] The relevant period in this case is therefore from June 21, 2019, through September 30, 2021. See Docket Entry 10 at CM/ECF 3, n.3.

---

[2]     Turner testified during the administrative hearing that he was born on August 25, 1990, see Transcript at 42, and he made a similar representation in his brief, see Docket Entry 8 at CM/ECF 3. The ALJ found that Turner was actually born on August 25, 1980, and substantial evidence on the record as a whole supports that finding.

[3]     Turner's counsel represented during the administrative hearing that Turner's insured status for disability insurance benefits expired on September 30, 2020. See Transcript at 41. The ALJ found that Turner's insured status for such benefits actually expired on September 30, 2021, and substantial evidence on the record as a whole supports that finding.

In the ALJ's decision denying Turner's application for disability insurance benefits, the ALJ summarized the evidence in this case. <u>See</u> Transcript at 16-26. Turner, in turn, summarized the evidence as a part of his brief. <u>See</u> Docket Entry 8 at CM/ECF 3-41. There is no dispute as to the evidence, and the Court will not repeat either summary in full or otherwise recite the evidence in great detail. Instead, the Court notes the following evidence in order to place Turner's assertions of error in the proper context.

With respect to Turner's gastric problems, the record reflects that he reported being hospitalized "multiple times for kidney stones between 2008 and 2016." <u>See</u> Transcript at 706. He thereafter experienced an occasional kidney stone, which oftentimes caused painful urination and blood in his urine. <u>See</u>, <u>e.g</u>., Transcript at 2265. He sought medical attention for his problems, and they were treated conservatively.

Turner occasionally experienced pain in his abdomen, altered bowel habits, and bouts of nausea and vomiting. <u>See</u>, <u>e.g</u>., Transcript at 533-534/927-930, 570, 2105. The diagnoses of his problems included acute gastroenteritis, "likely viral in etiology," <u>see</u> Transcript at 533, possible irritable bowel syndrome, <u>see</u> Transcript at 571, and gastroesophageal reflux disease ("GERD") without esophagitis, <u>see</u> Transcript at 2107. His

problems were treated with medication that included Prilosec and Bentyl. Diet and lifestyle modifications were also recommended. At one point, a colonoscopy was scheduled, but Turner missed it because "deer season started the day before his procedure." See Transcript at 2088. On another occasion, he presented to an emergency room complaining of abdominal pain, and his appendix was removed. See Transcript at 1757-1767.

Turner has suffered from mental impairments for a number of years, impairments that have been identified, at times, as anxiety, depression, a bi-polar disorder, Post-Traumatic Stress Disorder ("PTSD") and a depressive disorder. On occasions, he reported auditory and visual hallucinations, see, e.g., Transcript at 2109, and suicidal ideations, see, e.g., Transcript at 1550. He was also sometimes found to have, inter alia, an abnormal mood and affect and questionable insight and judgment. See, e.g., Transcript at 1619. On other occasions, though, Turner denied auditory and visual hallucinations, see, e.g., Transcript at 1627, and suicidal ideations, see, e.g., Transcript at 1619. He was also sometimes found to have, inter alia, a normal mood and affect, see, e.g., Transcript at 1898, and fair insight and judgment, see, e.g., Transcript at 1627. He attended outpatient therapy for his problems and was prescribed medication that included Seroquel and Trazodone.

In June of 2021, Dr. Vickie Caspall, Ph.D., ("Caspall") performed a mental diagnostic evaluation of Turner. <u>See</u> Transcript at 1994-1999. She recorded his employment history to be as follows:

> Claimant graduated high school in 1999. After high school he says he had numerous jobs. The longest he worked at a position was 2 years at a landscaping company. He joined the military in 2008 and was in service until 2016. Following discharge, he worked at a home construction store for 1 day. He moved into a homeless shelter soon after and was there 6-7 months. He says he got an apartment with help from the VA and tried to work delivering furniture. He worked for 2 months until he started receiving VA benefits. He hasn't worked since 2017.

<u>See</u> Transcript at 1995. A mental status evaluation was largely unremarkable as he exhibited, <u>inter alia</u>, a calm, cooperative affect; spontaneous, fluent, goal-directed speech; and logical thought process and content. He did, though, report a mildly depressed mood with feelings of anxiety. Caspall found that Turner is capable of performing many day-to-day activities, although he requires the help of an aide; is capable of adequate, socially appropriate communication and interaction; and does not function within the Intellectual Disability range. Caspall observed nothing to suggest that Turner is incapable of performing the typical mental/cognitive demands of basis work-like tasks or in sustaining concentration and persistence in completing those tasks.

Turner has also suffered from neck and back pain for a number of years, which was attributed, in large part, to what was characterized as degenerative disc disease, scoliosis, and neuropathy. Testing prior to the relevant period in this case revealed, <u>inter</u> <u>alia</u>, minimal central disc bulging at C5-C6 and C6-C7, mild bulging disc with associated degenerative disc disease at L5-S1, and early degenerative changes in his lower lumbar spine. <u>See</u> Transcript at 368, 369. Subsequent testing revealed, <u>inter</u> <u>alia</u>, "mild degenerative skeletal change and chronic partial compression of the vertebral body at T12 with slight anterior wedging." <u>See</u> Transcript at 2286. At L5-S1, there was a "mild central posterior bulge of the disc without herniation or neural impingement." <u>See</u> Transcript at 2286. Turner oftentimes had tenderness in the lumbar portion of his back and a decreased range of motion, <u>see</u>, <u>e.g.</u>, Transcript at 2268, as well as positive straight leg raises, <u>see</u>, <u>e.g.</u>, Transcript at 2242. On other occasions, though, he had a normal range of motion, <u>see</u>, <u>e.g.</u>, Transcript at 1813; negative straight leg raises, <u>see</u>, <u>e.g.</u>, Transcript at 2104; and full strength in his bilateral upper and lower extremities, <u>see</u>, <u>e.g.</u>, Transcript at 1644. His gait was typically observed to be within normal limits. <u>See</u>, <u>e.g.</u>, Transcript at 1302. He was prescribed medication for his pain and received medial branch blocks on more than one occasion.

In February of 2022, or five months after the date last insured, Stephanie Duffel, APRN, ("Duffel") performed a general physical examination of Turner. <u>See</u> Transcript at 2239-2244. Duffel opined, in part, that Turner has a mild limitation in his ability to walk and moderate limitation in his ability to stand.

Turner's medical records were reviewed by state agency medical consultants as a part of his application for disability insurance benefits. Dr. Denise Greenwood, M.D., opined in July of 2021, and in March of 2022 Dr. Elizabeth Berry, M.D., agreed, that Turner was capable of performing light work. <u>See</u> Transcript at 112-113, 128-130. Dr. Kristin Addison-Brown, Ph.D., opined in July of 2021, and in November of 2021 Dr. Nicholas Rios, Psy.D., agreed, that Turner was capable of performing work where interpersonal contact is incidental to the work performed. <u>See</u> Transcript at 114-117, 131-132. Turner could perform complex tasks that are learned and performed by rote, few variables, and little judgment, but he would need supervision that is simple, direct, and concrete.

The record contains a summary of Turner's work history. <u>See</u> Transcript at 243-267. The summary reflects that he has worked very little since his 2016 discharge from the military. To the extent Turner did work, the ALJ characterized the work as that of a material handler.

Turner completed a series of reports as a part of his application for disability insurance benefits. In a function report, he represented, inter alia, that he needs help attending to his personal care, and an aide comes to his home three times a week for three hours a day. See Transcript at 304-311. Turner's ability to prepare meals and complete household chores is limited, although he can drive an automobile and shop for groceries.

In a pain report, Turner represented that he experiences pain in his shoulders and back every day for about half the day. See Transcript at 312-314. He can only stand and walk for about five minutes before he begins to experience pain, and his pain only subsides when he sits down to rest.

Turner testified during the administrative hearing. See Transcript at 42-63. He served eight years in the military and, upon his discharge, received a one hundred percent disability rating. He lives alone and has trouble remembering to perform, and actually performing, activities of daily living. He requires the assistance of an aide, paid for by the Veterans Administration, and the help of friends to perform such activities as bathing, doing dishes, keeping the house clean, preparing meals, and grocery shopping. Turner experiences pain when standing for more than ten to fifteen minutes. Although he can drive an automobile, his ability to do so depends upon his mental state. He sometimes has difficulty breathing

and uses an inhaler one or twice a day to help him breathe. His stomach problems make it difficult to keep weight on, and he continues to experience pain and nausea caused by those problems. He has been prescribed marijuana to improve his appetite. There are many days Turner does not leave his home because he hurts so much or is otherwise feeling depressed. When he does leave his home, he either goes shopping with his aide or visits a nearby friend. Turner sees a psychiatrist every couple of months. The medicine he takes for his mental impairments help somewhat, but they sometimes make it difficult for him to sleep. He recently stopped hunting and fishing.

The ALJ found at step two of the sequential evaluation process that through the date last insured, Turner had severe impairments in the form of degenerative disc disease, scoliosis, neuropathy, asthma, PTSD, and a depressive disorder. The ALJ found that Turner's gastric problems were not severe impairments through the date last insured for three reasons, one of which is that they were "generally controllable with diet, lifestyles changes, and medication." See Transcript at 16. The ALJ then assessed Turner's residual functional capacity. The ALJ found that through the date last insured, Turner was capable of performing a reduced range of light work. Specifically, the ALJ found the following:

> ... the claimant had the residual functional capacity to perform light work ... except the claimant can occasionally stoop, kneel, crouch and crawl. The claimant can have no concentrated exposure to temperature extremes, dusts, fumes, humidity, chemicals or other pulmonary irritants. The claimant can understand and remember simple instructions. The claimant can sustain attention and concentration to complete simple tasks within customary workplace breaks. The claimant can use judgment to make simple work-related decisions. The claimant can interact as needed with supervisors and coworkers but only occasional interaction with the general public. The claimant can tolerate occasional changes in a routine work setting.

See Transcript at 19-20. The ALJ found at step four that through the date last insured, Turner was unable to perform his past relevant work. At step five, the ALJ relied upon a vocational expert's testimony and found that a hypothetical individual with Turner's limitations could have worked as a mail clerk, housekeeping cleaner, or hand packager through the date last insured. In so finding, the ALJ found that the vocational expert's testimony was consistent with the DOT.

Turner maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. Turner so maintains for several reasons, the first being that his gastric problems were severe impairments through the date last insured, and the ALJ erred at step two when he failed to so find.

At step two, the ALJ is required to identify the claimant's impairments and determine if they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) (quoting Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)).

Were the Court making the determination at step two in the first instance, the Court would likely have found that Turner's gastric problems were severe impairments through the date last insured. The Court, though, is not tasked with making that determination. The Court is instead called upon to determine whether substantial evidence on the record as a whole supports the ALJ's finding that Turner's gastric problems were not severe impairments. For the reason that follows, the ALJ could find as he did.

Here, there is little medical evidence that Turner's gastric problems had more than a minimal effect on his ability to work through the date last insured. The problems were intermittent and largely short-lived. They were amendable to conservative treatment in the form of medication, diet, and lifestyle modifications, all of which proved helpful when he complied with the recommendations. When he was hospitalized for stomach problems in April of 2019, the problems were believed to be viral in etiology and were treated conservatively.

11

Notwithstanding the foregoing, the ALJ's failure to identify Turner's gastric problems as severe impairments is ultimately of no legal significance. Once the ALJ proceeds past step two, as he did here, the labeling of an impairment as "severe" or "non-severe" has no legal significance because he must consider all of the claimant's impairments in crafting the claimant's residual functional capacity. See 20 C.F.R. 416.945(e). The ALJ represented that he considered all of Turner's impairments, "including those that are not severe," in assessing Turner's residual functional capacity, see Transcript at 16, and there is nothing to suggest that the ALJ did not do as he represented.

Turner offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Turner maintains that his residual functional capacity was erroneously assessed because it does not adequately account for his gastric problems, mental impairments, difficulties standing and walking, and limited daily activities.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite his limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record. See Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010).

12

In crafting Turner's residual functional capacity, the ALJ did not incorporate any limitations for Turner's gastric problems. The ALJ incorporated limitations for Turner's mental impairments and difficulties standing and walking, but not to the extent Turner believes the ALJ should have. The ALJ also considered Turner's limited daily activities, but again not to the extent Turner believes the ALJ should have. The ALJ's assessment is adequate and is supported by substantial evidence on the record as a whole for the reasons that follow.

With respect to Turner's gastric problems through the date last insured, the ALJ could decline to account for any limitations they caused. As the Court has noted, the problems were intermittent and largely short-lived. They were amendable to conservative treatment in the form of medication, diet, and lifestyle modifications, all of which proved helpful when he complied with the recommendations. When he was hospitalized for stomach problems in April of 2019, the problems were believed to be viral in etiology and were treated conservatively. It is also at least worth observing that Duffel considered Turner's "nausea, decreased appetite, unexplained weight loss, and ... GERD but did not include any attendance or off-task limitations in her February 2022 functional assessment ..." See Docket Entry 10 at CM/ECF 5.

With respect to Turner's mental impairments through the date last insured, the ALJ could and did limit Turner to simple work as the relevant evidence is conflicting and capable of more than one acceptable interpretation. As the ALJ correctly observed, there were times when Turner reported having auditory and visual hallucinations, suicidal ideations, and poor motivation. Turner had difficulty concentrating, an abnormal mood and affect, and questionable insight and judgment. There were other times, though, that he had no such hallucinations or ideations. He had, for instance, a normal mood and affect, fair insight and judgment, and a logical thought process and content.

The ALJ's assessment is supported by Caspall, whose opinions the ALJ found generally persuasive. Caspall observed Turner to have, inter alia, a cooperative affect, goal-directed speech, and logical thought process and content. Turner did, though, report a mildly depressed mood with feelings of anxiety. Caspall opined that Turner is capable of performing day-to-day activities, albeit with the help of an aide; is capable of appropriate communication and interaction; and does not have an intellectual disability. Caspall observed nothing to suggest that Turner is incapable of performing the typical mental/cognitive demands of basis work-like tasks or in sustaining concentration and persistence in completing those tasks.

Turner faults the ALJ for failing to adequately account for Turner's difficulties with concentration, persistence, and pace. The Court cannot agree as the ALJ could and did find that Turner is moderately limited in those respect. Turner simply offers another interpretation of the evidence.

With respect to Turner's ability to stand and walk through the date last insured, the ALJ could and did limit Turner to light work as the relevant evidence is conflicting and capable of more than one acceptable interpretation. Turner clearly has neck and back problems that give rise to difficulties standing and walking. As the ALJ correctly observed, there were times when Turner had tenderness in the lumbar portion of his back, a decreased range of motion, and positive straight leg raises. There were other times, though, that he was in no acute distress, had a normal range of motion, and had negative straight leg raises. He had normal strength in his lower extremities and a normal gait.

The ALJ's assessment is supported by Duffel, whose opinions were offered five months after the date last insured and were found partially persuasive. Duffel observed that Turner could stand/walk without an assistive device, walk on heel and toes, and could squat/arise from a squatting position. Duffel opined that Turner has a mild limitation in his ability to walk and moderate limitation in his ability to stand.

With respect to the ALJ's consideration of Turner's daily activities through the date last insured, the ALJ's consideration of those activities was certainly not comprehensive. It was, though, sufficient. The ALJ recognized his obligation to consider Turner's daily activities as a part of evaluating the intensity, persistence, and limiting effects of his symptoms. See Transcript at 20-21. Then, throughout the decision, the ALJ briefly noted Turner's daily activities and how they tended to support or undermine his representations regarding the severity of his symptoms. See Transcript at 19, 21, 23. For instance, the ALJ could and did note that Turner is able to drive and pay bills, "which invariably call for a degree of attention." See Transcript at 19. The ALJ also could and did note that Turner could perform some household chores, shop for groceries, and socialize with others. See Transcript at 23. The ALJ's characterization of Turner's daily activities is one of the acceptable characterizations.

Turner offers a third reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Turner maintains that the vocational expert's testimony is inconsistent with the DOT. Turner so maintains for the following reason:

> The [DOT] specifies the reasoning level associated with specific jobs. ...

Here, the ALJ stated that the hypothetical claimant could understand and remember simple instructions, could sustain attention and concentration to complete simple tasks within customary workplace breaks, and could use judgment to make simple work-related decisions. The vocational expert testified that such a person could work at light jobs as a mail clerk ..., housekeeping cleaner ..., and as a hand packer ..., as well as sedentary jobs as a document preparer ..., a final assembler ..., and a stuffer ... The hand packer and stuffer jobs have a reasoning level of two, which requires the ability to carry out detailed instructions, while the mail clerk and document preparer jobs have a reasoning level of three, which requires the ability to carry out more complex instructions. [Footnote in original: While two jobs identified by the vocational expert—housekeeping cleaner and final assembler—do have a reasoning level of one, the removal of the other four jobs would strikingly narrow the available number of jobs.] As such, they fall outside the capability of a claimant who is limited to simple work. ...

... the ALJ here did not include "one-to-two step" language in his hypothetical, but he limited the claimant to simple tasks. This set up at least a possible conflict with the DOT.

... Here, neither the ALJ nor the vocational expert ... recognized the potential conflict between the DOT and the vocational expert's testimony as to reasoning, much less addressed it.

See Docket Entry 8 at CM/ECF 50-51, 53.

Turner's assertion of error warrants no relief. The Court so finds for the following reason advanced by the Acting Commissioner of the Social Security Administration ("Commissioner"):

... Assuming *arguendo* that Plaintiff's argument was correct, and the reasoning level two and three jobs the vocational expert identified were disregarded, a significant number of jobs would remain to meet the Commissioner's burden of production at step five.

As Plaintiff concedes, among the three jobs the ALJ found [Plaintiff] capable of performing at step five based on the vocational expert's testimony, only two include reasoning level requirements that Plaintiff finds problematic. ... The remaining position, housekeeping cleaner, is a reasoning level one job, which Plaintiff does not challenge. Based on vocational expert testimony, the ALJ found that position alone represent 131,000 jobs in the national economy. ... That number far exceeds the minimum the Eighth Circuit has found to establish work existing in "significant numbers" in the national economy under 20 C.F.R. 404.1566. See Welsh v. Colvin, 765 F.3d 926, 930 (8th Cir. 2014) (the vocational expert's testimony that 36,000 surveillance systems monitor jobs existed ... nationally, and that Plaintiff could perform "most" of those jobs, was a sufficient number of jobs in the national economy to fulfill the Commissioner's burden at step five). ...

See Docket Entry 10 at CM/ECF 13. Any error committed by the ALJ was harmless as he identified a job existing in significant numbers—housekeeping cleaner—that Turner could perform. There is no conflict between the vocational expert's testimony and the DOT.

"It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the [ALJ's] decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201

(D.S.D. 2016). In fact, the Court may not reverse the ALJ's decision merely because substantial evidence would have supported an opposite decision. <u>See</u> <u>Id</u>. Here, the ALJ could find as he did as his findings are supported by substantial evidence on the record as a whole.

For these reasons, the Court finds that the ALJ's findings are supported by substantial evidence on the record as a whole. Turner's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 13th day of November, 2023.


_____
 UNITED STATES MAGISTRATE JUDGE